[Civ. No. 7643. Second Appellate District, Division Two.—May 9, 1933.]

J. R. VON KESLER, Respondent, v. H. A. BAKER, Appellant.

Bicksler, Smith, Parke & Catlin and Bicksler, Parke & Catlin for Appellant.

Edmond Wheeler Pottle and Edward H. Estill for Respondent.

WORKS, P. J.—This is an action to recover the sum of $11,755.61 for services rendered and traveling expenses incurred under a contingent contract to testify as an expert witness in certain litigation. Plaintiff had judgment and defendant appeals.

Baker was a fruit and berry packer. He had placed in cold storage with a certain company in Portland, Oregon, a large amount of loganberries. It was claimed by him that the berries were allowed to ferment through the negligence of the storage company. A part of the damaged product was still in the company's warehouse, and a part had been shipped to Chicago. Baker contemplated the commencement of two actions for damages, one to cover the berries remaining in the storage company's warehouse, the other to cover those which had been shipped, although but one action was at first under consideration by him. Von Kesler was a fruit and berry broker in Chicago, and had represented Baker there for many years. The contemplated actions were commenced, Von Kesler attended the trial of each, and testified as an expert witness in each. He came to Oregon, where the actions were tried in the United States court and his traveling expenses were incurred because of his trips from Chicago to Oregon and return. Judgment was procured in one action for the sum of $23,000, in the other for $19,649.10. The amount of these judgments was paid to Baker before the commencement of the present action.

At the trial of this action counsel for Von Kesler made a preliminary statement to the jury. He announced to the triers of fact that he expected to prove the following: In December, 1929, Von Kesler met Baker, at the request of the latter, in Seattle. After some preliminary conferences and investigations, Baker said to Von Kesler, "I will have to bring this suit . . . and I will have to have your testi-

mony as an expert; you are the only one I can prove my case by, and you stand by me, Von, and I will give you 25 per cent of any verdict I may get. If the cases are not tried, I will give you 20 per cent." In the spring of 1921 Baker called at the office of Von Kesler in Chicago and told him that his attorney had determined to begin the two actions above mentioned, instead of one. Baker then said, "but in any case, Von, I want you to testify, I want you to be my expert in that case; you are the only one that knows the facts, and you are the only one who can prove them from the standpoint of an expert, and I will pay you 25 per cent if we try the cases, and 20 per cent if we settle them." Von Kesler said he would be there when the cases were called. The first case was tried about June or July, 1922, the second "along in the summer" of 1926. On each occasion Von Kesler arrived on the scene some time before the case was called—his first arrival was seven days in advance—and in the two interims he had numerous consultations with Baker and his counsel. In short, the statement to the jury was to the effect that Von Kesler fully performed his part of the agreement. We premise here to say, also, that the evidence showed the same thing.

Von Kesler's testimony fully justified the assertions made in the opening statement, but he testified also that in the conversations between him and Baker, the latter said he expected Von Kesler to testify to the truth at the trial of the two actions. Indeed, the opening statement did not show that he contracted to do otherwise.

 Appellant suggests to us—we do not say "contends", for the point is one which cannot directly avail him, as it affects alone the public welfare—that the agreement upon which this action is founded was void as against public policy. If the contract was void, it can be so only because the compensation promised to be made to Von Kesler was payable upon the contingency that the actions were to be settled or won. Appellant seeks to put upon some of the testimony a construction which would give to the compact even a more sinister complexion, but we think the view thus taken is untenable.

In an action before the Supreme Court the plaintiff sued to recover for services rendered as a detective in procuring evidence to be used in a divorce suit. The court said:

"While in the transcript there are various assignments of error, the sole point urged here by appellant for a reversal is that the contracts made the basis of the cause of action and as found by the court are contrary to public policy and void, and no recovery should have been had upon them. In elaboration of this proposition of law appellant asserts that any contract between parties which has for its object the dissolution of the marriage relation, or facilitating that result, is contrary to good morals and void; that further, any contract having for its object the procurement of testimony for the purpose of securing a divorce, is illegal and void." The opinion of the court also contains the following: "[A] contract is void whereby one agrees to obtain or procure testimony of certain facts which will successfully support or defeat a lawsuit, or which provides that payment to the party procuring such testimony is to be contingent upon the result of the action for which he is engaged to procure it. It is the element of payment contingent upon the success of the litigation in which the evidence is to be produced, or the fact that the agreement is to procure evidence not of facts as they exist, but of particular facts necessary to the success of the party litigant who contracted for their production, which vitiates the contract. It is the contingency on the one hand and the agreement to furnish a given set of facts essential to a successful litigation on the other, and both of which in their nature are calculated to induce false charges and the production of perjured testimony, to subvert the truth and pervert justice through fraud, trickery, and chicanery at the hands of unscrupulous private detectives on [or] other conscienceless persons, which has impelled the law, with wisdom, to declare such contracts illegal" (*Hare* v. *McGue*, 178 Cal. 740 [174 Pac. 663, L. R. A. 1918F, 1099]). It will be observed that in this passage, by the use of the disjunctive in two places, the court declares such a contract as the one under discussion to be void if the payment to be made is "contingent on the success of the litigation" in which the evidence is to be used. It is true that the court then held that the contract before it was not subject to the condemnation pronounced by the language quoted. Nevertheless, and if the passage be regarded as *obiter*, it is thoroughly in accord with our views concerning the agreement between Von Kesler and

Baker. The decision of the Supreme Court is in part quoted by this court in *Harris* v. *Moore*, 102 Cal. App. 413 [283 Pac. 76, 78], although there the agreement was principally condemned as being one ''to furnish a particular state of facts'', and not evidence known or suspected to exist. The facts stated by the court show, however, that a bonus was agreed to be paid, contingently, upon the production of a certain item of evidence to be developed in the future, although the opinion recites that ''there is no contention that the bonus was earned''.

Let us return to the conditions presented by the instant case. The ordinary witness in a lawsuit, civil or criminal, is compellable to attend court and testify to facts known to him upon the payment of the modest witness fee provided by law. The expert witness may require more, and many men of high character and great ability in various scientific pursuits make their living out of the munificent compensation earned by them as professional witnesses. Even though these men are paid irrespective of the result of the causes in which they testify, there is a too prevalent belief that they will take the witness-stand in behalf of either party to an action who first comes forward to employ them. This scandal—for we think it may be called one—would be vastly enhanced if agreements like the one before us were permitted to stand. If we assume that Baker was damaged in the actions over the acetous loganberries as found by the United States court, he had an important interest at stake in the litigation, but Von Kesler, to the extent of his one-fourth interest in any judgments to be procured in the cases, was practically made a party complainant in them in return for his services to be rendered as an expert witness. Such things cannot be. Here was too great a temptation to practice deceit and to commit the too common crime of perjury. The agreement was void as tending to obstruct and impair the administration of justice, and therefore as contrary to public policy.

The complaint sets up, under the common count, a cause of action for judgment in the same amount alleged to be due under the attempted express contract, and respondent insists that he is entitled to the reasonable value of his services in the amount named. We are not inclined, under the circumstances of the case as detailed above, to regard

this claim with great complacency. After what we have already said, to yield to the blandishments of respondent would be too much like a rendition of obedience to the injunction of Matthew: ''But when thou doest alms, let not thy left hand know what thy right hand doeth.'' We are not disposed to do alms under respondent's common count.

Respondent contends, upon various grounds, that appellant has waived, or has failed properly to present, the question above discussed. This is not a question determined for the benefit of appellant. It is one for the courts alone, out of a respect which they, of all peoples and institutions, should entertain toward the due administration of justice in all the purity which can characterize the activities of human minds. The Supreme Court has said something on this head which is distinctly apposite: ''It is said by appellants that respondents (1) were estopped to assert facts consti- tuting the fraud in this case; (2) that the oral agreement was superseded by the writing which cannot be varied by parol; (3) that appellants have not alleged the fraudulent part of the agreement, and it is only respondents who have sought to rely upon it, and therefore that the latter will not be permitted to profit by their own turpitude. Each of these considerations is a false quantity in a case of this character. We are here concerned with a fraud, not against any individual, but against the public. The rule is well stated in *Dealey* v. *East San Mateo Land Co., supra* [21 Cal. App. 39, 130 Pac. 1066]: 'It makes no difference how or when the fact was brought to the attention of the court that the contract sued upon is against public policy. Neither does it matter whether or not one of the parties raises the question of its illegality upon the account, but courts of law and of equity, as the true character of such a contract is disclosed, refuse to permit themselves to be used in settling a controversy arising out of such a contract' '' (*Haley* v. *Bloomquist,* 204 Cal. 253 [268 Pac. 365, 367]. See, also, *Kreamer* v. *Earl,* 91 Cal. 112 [27 Pac. 735]; *Dealey* v. *East San Mateo Land Co.,* 21 Cal. App. 39 [130 Pac. 1066]; *Domenigoni* v. *Imperial L. S. & M. Co.,* 189 Cal. 467 [209 Pac. 36]).

The judgment which is below directed to be entered by the trial court shall not carry costs.

Judgment reversed, with directions to the trial court to render judgment that plaintiff take nothing by his action.

Stephens, J., and Archbald, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 24, 1933, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 7, 1933.