Emile, Sr., and Dolly R. Kalil v. Commissioner. Buddy Enterprises, Inc. v. Commissioner.
Kalil v. Commissioner
Docket Nos. 2502-63 and 2503-63.
United States Tax Court
T.C. Memo 1965-175; 1965 Tax Ct. Memo LEXIS 155; 24 T.C.M. (CCH) 924; T.C.M. (RIA) 65175; June 28, 1965
*155 deQuincy V. Sutton, 214 Dixie Lovers, Meridian, Miss., for the petitioners. Robert G. Faircloth, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax as follows: [SEE TABLE IN ORIGINAL] The issues for decision are: (1) Whether Emile, Sr., and Dolly R. Kalil received taxable income during each of the taxable years 1957, 1958, and 1959 through the payment of certain amounts to or on behalf of their daughter and son by Buddy Enterprises, Inc., some of which amounts were shown on the books of that corporation as loans, and if so, the amount of income they received from these payments. (2) If it is held that the payments by Buddy Enterprises, Inc., to or on behalf of the daughter of Emile, Sr., and Dolly R. Kalil constituted taxable income to these petitioners, whether they are entitled to a deduction of the amounts of such payments which represented interest on a mortgage on the home in which these petitioners and their daughter lived. (3) Whether Buddy Enterprises, Inc., understated its taxable income from the sale of cigarettes for its taxable period *156 August 27, 1957 through July 31, 1958, and its fiscal year ended July 31, 1959, and if so, the amount of such understatement. Certain other issues raised by the pleadings have been conceded or abandoned by petitioners. Findings of Fact Some of the facts have been stipulated and are found accordingly. Emile, Sr., and Dolly R. Kalil, husband and wife residing in McComb, Mississippi, filed joint Federal income tax returns for the years 1957, 1958, and 1959 with the district director of internal revenue at Jackson, Mississippi. Buddy Enterprises, Inc., incorporated under the laws of the State of Mississippi on August 27, 1957, filed its Federal income tax returns for its taxable period August 27, 1957, through July 31, 1958, and its fiscal year ended July 31, 1959, and an amended return for its fiscal year ended July 31, 1959, with the district director of internal revenue at Jackson, Mississippi. The stockholders of record, with the number of shares recorded in the name of each, of Buddy Enterprises, Inc., are as follows: Number
Stockholder
of shares
Date issued
Emile T. Kalil, Jr.
125
Sept. 30, 1957
Stephanie Teresa Kalil
125
Sept. 30, 1957
Edward Kalil
20
Sept. 30, 1957
Mrs. Ray Eyler
10
Sept. 30, 1957
Ray Eyler
10
Sept. 30, 1957
Dolly R. Kalil
5
Sept. 30, 1957
Emile T. Kalil, Sr.
5
Sept. 30, 1957
*157 Emile T. Kalil, Jr. (hereinafter referred to as Emile, Jr.) and Stephanie Teresa Kalil (hereinafter referred to as Stephanie) are the son and daughter of petitioners Emile T. Kalil, Sr. (hereinafter referred to as Emile, Sr.) and Dolly R. Kalil (hereinafter referred to as Dolly). Edward Kalil is the brother of Emile, Sr., and Ray Eyler is the brother-in-law of Emile, Sr. Prior to the formation of Buddy Enterprises, Inc., Emile, Sr., controlled the operation of an unincorporated pinball and music machine business known as Dolly Enterprises and he also controlled the operation of an unincorporated cigarette vending machine business known as American Cigarette Company. On August 26, 1957, the day prior to the incorporation of Buddy Enterprises, Inc., Emile, Sr., and Dolly executed a quitclaim deed which provided that in consideration of the sum of $5,000 and the assumption of certain indebtedness, certain real and personal property was conveyed to Emile, Jr. The property listed in this quitclaim deed consisted of 202 specifically described pinball and music machines, 140 cigarette vending machines, 2 separate parcels of real property, 3 automobiles, and 2 pick-up trucks. One parcel *158 of real estate conveyed by the deed was the home in which Emile, Sr., Dolly, and Stephanie lived. Emile, Jr., did not assume the mortgage on this home. By quitclaim deed dated September 28, 1957, Emile, Jr., and Stephanie, for a recited consideration of $2,500 conveyed the same properties, with the exception of the home of Emile, Sr., and Dolly, to Buddy Enterprises, Inc. By quitclaim deed executed September 27, 1957, Emile, Jr., conveyed the home which Emile, Sr., and Dolly had conveyed to him, to Stephanie. During the period from August 27, 1957, through July 31, 1959, Emile, Sr., was the manager of the pinball and music machines and cigarette vending machine operations of Buddy Enterprises, Inc., and Emile, Sr., either alone or in conjunction with Emile, Jr., Edward Kalil, or Ray Eyler, made the decisions affecting the policies of Buddy Enterprises, Inc. Emile, Sr., maintained and kept the cash receipts and disbursements journals respecting the income and expenditures of Buddy Enterprises, Inc. Ray Eyler was the route manager of the cigarette vending machine business and Edward Kalil was the route manager of the music and pinball machine business. On June 15, 1949, Emile, *159 Jr., the grandson of Tanos Kalil was designated the beneficiary of an insurance policy of Tanos Kalil. Upon the death of Tanos Kalil in 1952, Emile, Jr., received $5,251.83 as beneficiary of this policy, which amount he deposited in a savings account. In 1954 some portion of these funds was invested by Emile, Jr., in certain music machines and cigarette vending machines which were turned over to Dolly Amusement Company when Emile, Jr., returned to college later in that year and some of these machines were included in the transfer to Buddy Enterprises, Inc. Emile, Jr., was president of Buddy Enterprises, Inc., from the time of its incorporation and as such was paid a salary. He had begun work for his father in the cigarette vending machine business in approximately June 1953 shortly after he was married and had continued working for his father, and also for a time operating a route which he had purchased with some of the funds which he received as beneficiary of his grandfather's insurance policy. From 1953 throughout the years here involved, except for a short while in 1954 when he returned to college, Emile, Jr., worked in the vending machine business with his father. Emile, Jr., *160 participated in decisions made on behalf of Buddy Enterprises, Inc., even though Emile, Sr., exercised the final control over the manner in which the business was operated. The books and records of Buddy Enterprises, Inc., reflect loans made to Stephanie as follows: Taxable period
Amount
Aug. 27, 1957, through July 31, 1958
$5,162.02
Aug. 1, 1958, through July 31, 1959
1,603.45
Aug. 1, 1959, through December 31,
1959
706.05
Total
$7,471.52
Under date of August 31, 1957, a decree was entered in the Chancery Court of Mississippi removing Stephanie's disabilities of minority. This decree recited that Stephanie was 16 years old and would be 17 years on October 18, 1957, and that she was a senior in high school. After August 30, 1957, Stephanie continued in high school and subsequently went away from home to college.
Of the amounts entered on the books and records of Buddy Enterprises, Inc., the following amounts represented payment of principal and interest on the mortgage on the home in which Emile, Sr., Dolly, and Stephanie resided, which home had been conveyed into Stephanie's name by Emile, Jr., shortly after it had been conveyed to him by Emile, Sr. *161 , and Dolly: Amount
paid on
Amount of
Date of payment
principal
interest paid
Calendar year 1957
September
$ 500.00
$105.00
October
500.00
109.80
November
500.00
107.71
December
500.00
105.42
Total
$2,000.00
$427.93
Calendar year 1958
January
$ 250.00
$100.84
February
250.00
99.46
March
250.00
98.54
April
250.00
97.40
May
250.00
96.25
June
250.00
95.10
September
250.00
93.94
October
91.67
November
91.67
December
91.67
Total
$1,750.00
$956.54
Calendar hear 1959
January
$ 91.67
February
91.67
March
91.67
April
91.67
May
91.67
June
91.67
July
91.67
Total
$641.69
The books and records of Buddy Enterprises, Inc., reflect loans to Emile, Jr., as follows: Taxable period
Amount
August 27, 1957 through July 31, 1958
$ 655.22
August 1, 1958, through July 31, 1959
576.00
August 1, 1959, through December 31,
1959
336.02
Total
$1,567.24
The books and records of Buddy Enterprises, Inc., reflect a loan made to Emile, Jr.'s wife on June 20, 1959, in the amount of $900. The advancements made by Buddy Enterprises, Inc., to Stephanie, Emile, Jr., and Emile, *162 Jr.'s wife which were set up on the books as loans to officers have not been repaid and none of the employees or officers of Buddy Enterprises, Inc., expects that these amounts will be repaid. The books and records of Buddy Enterprises, Inc., show that on February 4, 1958, a Ford Fairlane Club Victoria automobile was purchased by that corporation at a cost of $2,250 over and above the trade-in allowance made for a 1955 Pontiac automobile. The payment of this $2,250 by Buddy Enterprises, Inc., was authorized and directed by Emile, Sr. The Ford Fairlane automobile was used by Stephanie as her personal automobile. Stephanie was not active in the business operation of Buddy Enterprises, Inc., during any of the years here involved. During its taxable period August 27, 1957, through July 31, 1958, and its fiscal year ended July 31, 1959, Buddy Enterprises, Inc., purchased cigarettes in the respective amounts of $89,767.36 and $118,049.22. The total costs of cigarettes sold during these respective periods, after making adjustments for beginning and ending inventories, were $84,441.48 and $115,394.89, respectively. During the years 1957, 1958, and 1959, on a number of occasions cigarette *163 machines owned by Buddy Enterprises, Inc., were unlawfully broken into and the cigarettes and money in the machines taken. During these years such breaking into of machines occurred at the rate of approximately 20 times per year. The cigarette machines which were operated by Buddy Enterprises, Inc., held varying quantities of cigarettes. The average number of packages of cigarettes which the machines held was 450, but since some brands of cigarettes were more popular than others the machines were never filled to capacity. The machines would be serviced once a week, and if a particular brand of cigarettes was not popular at a certain location, the column for that brand would be filled at half or less of capacity. During the years 1957, 1958, and 1959, the average cost of cigarettes per carton to Buddy Enterprises, Inc., at wholesale was approximately $2.35 and the price per pack received through the machines was 30 cents, making the receipt per carton of $3.00. Sometimes when the routeman was servicing a machine, he would sell a carton of cigarettes to the proprietor of a location where the cigarette machine was placed at the wholesale cost of the cigarettes to Buddy Enterprises, *164 Inc. Somtimes the routeman servicing the cigarette machine would take some of the funds that he had collected from the cigarette machines or by sale of cigarettes at the wholesale price per carton to a proprietor of a location and spend it for gasoline or food. When the route manager ran short on certain types of cigarettes in servicing the various locations on the route, he would go to a wholesale house and purchase cigarettes for cash out of the proceeds of his collections from the various cigarette machines. When the routeman returned with the money collected from the route, the entry made on the books as receipts from sales of cigarettes by Emile, Sr., would be the cash brought in which would be the amount of cash collected less these various expenditures made by the route manager. On July 23, 1957, assessments were made against Emile, Sr., for income taxes with respect to the years 1950 through 1955 in the amount of approximately $20,000. Respondent in his notice of deficiency to Emile, Sr., and Dolly increased their income for the years 1957, 1958, and 1959 by the amounts of $2,825.72, $6,221.56, and $5,289.70 under the designation, "unreported income," explaining the amounts *165 as being unreported income received from Buddy Enterprises, Inc., by means of unrecorded withdrawals therefrom and personal expenses charged to and/or paid thereby. Respondent treated these amounts as dividends paid to Emile, Sr., by Buddy Enterprises, Inc., and therefore the taxable unreported income in 1958 as shown in the notice of deficiency was limited by available earnings and profits. For 1957 and 1959 respondent determined that available earnings and profits exceeded the withdrawals. These amounts of unreported income include the items here contested by petitioners of amounts paid to or on behalf of Emile, Jr., the $900 paid to Emile, Jr.'s wife in 1959, and payments of amounts to or on behalf of Stephanie including the mortgage payments and interest thereon on the home which had been deeded to Stephanie and the $2,250 expended in 1958 to purchase the Ford Fairlane automobile, as shown in detail on a schedule attached to the notice of deficiency which computation is incorporated herein by this reference. Respondent in his notice of deficiency issued to Buddy Enterprises, Inc., increased the reported income for the taxable period ended July 31, 1958, by $5,793.30 and for the *166 fiscal year ended July 31, 1959, by the amount of $2,182.11 under the designation "unreported income" with the explanation that the books of the corporation did not reflect total purchases and sales of cigarettes necessitating determination of sales by a recomputation on the mark-up basis, a copy of the recomputation being attached to the notice of deficiency. In this recomputation, respondent determined the total costs of sales and deducted from such total costs determined, one percent for "losses" which amounted to $844.41 for the fiscal period ending July 31, 1958 and $1,153.95 for the fiscal year ended July 31, 1959. Respondent subtracted these amounts of losses from the costs of cigarettes sold and applied a mark-up of 27.6 percent to the remainder to arrive at corrected sales from which was subtracted the cost of sales to arrive at gross profits from cigarettes. Other adjustments were made by respondent in each of these deficiency notices to which error was assigned in the petitions and it is these issues which petitioners have conceded or abandoned. Ultimate Facts The amount designated as loans to Stephanie on the books of Buddy Enterprises, Inc., and the $2,250 cost *167 of the Ford Fairlane Club Victoria automobile purchased for her by the corporation constituted income to Emile, Sr., and Dolly as determined by respondent. Since Emile, Sr., remained liable on the mortgage on which principal and interest were paid by the corporation and charged in its books as loans to Stephanie, Emile, Sr., and Dolly are entitled to deduct the amount of interest paid by Buddy Enterprises, Inc., on this mortgage as set forth in our findings as interest paid by them inasmuch as the payments on this mortgage by Buddy Enterprises, Inc., are included as income to Emile, Sr. [1]
The amounts paid by Buddy Enterprises, Inc., on behalf of Emile, Jr., and the amount of the loan made in 1959 to Emile, Jr.'s wife do not constitute income to Emile, *168 Sr., and Dolly. Buddy Enterprises, Inc., is entitled to a reduction of its cost of cigarettes by $1,800 in the fiscal period ended July 31, 1958, and $1,800 in the fiscal year ended July 31, 1959, to compensate for losses because of unlawful taking of cigarettes and cash from its cigarette machines, for expenditures of cash by the route manager which did not enter into the deductions claimed for expenses or in the receipts reported on its books, and for any overstatement of profit which might be included in respondent's computation done on a mark-up basis on cigarettes which were sold at wholesale to location managers. Opinion The issues for decision are entirely factual. Respondent contends that there was no substance to the issuance of stock in Buddy Enterprises, Inc., to either Stephanie or Emile, Jr., and that substantively this stock was that of Emile, Sr., who controlled the business of the company and was its manager. For this reason respondent has taxed to Emile, Sr., and Dolly amounts of payments to Stephanie and Emile, Jr., and payments of personal expenses on behalf of Stephanie and Emile, Jr. Petitioners have completely failed to show that amounts paid to or on *169 behalf of Stephanie (including payments on the mortgage on the home which had been deeded to Stephanie without any assumption by her or Emile Jr., through whom it was deeded to her, of the mortgage thereon) were not in substance payments to Emile, Sr., by the corporation Buddy Enterprises, Inc. Although the amounts were set up on the books of the corporation as loans, petitioners do not contend that there was ever any intent of repayment and certainly have failed to show that there was such an intent. We therefore sustain respondent's determination in taxing to Emile, Sr., and Dolly the amounts set up on the books of Buddy Enterprises, Inc., as loans to Stephanie and the amounts paid on her behalf including the payment for the Ford Fairlane automobile which was for Stephanie's use. At the trial respondent agreed with petitioners that if his determination that the payments on the mortgage on the home which had been deeded to Stephanie without any assumption by her of that mortgage were income to Emile, Sr., and Dolly, it followed that these payments by the corporation were in effect payments by Emile, Sr., and Dolly, themselves, on the principal and interest on their indebtedness *170 and as such the portion which represented interest payments was deductible by them in each year. We therefore sustain petitioners in their contention that in the computation of the tax liability of Emile, Sr., and Dolly, they are entitled to deductions in each of the years 1957, 1958, and 1959 of the amounts of the interest payments on the mortgage which amounts are set forth in our findings. A different situation exists with respect to the amounts of so-called loans or payments on behalf of Emile, Jr., and the so-called $900 loan to Emile, Jr.'s wife. Emile, Jr., was an adult actively employed in the business of Buddy Enterprises, Inc., and had been working in connection with the cigarette vending machine and music machine business of his father for various periods of time prior to the incorporation of Buddy Enterprises, Inc. Also, Emile, Jr., previously purchased with his own funds certain machines which were turned over to Buddy Enterprises, Inc., through Dolly Amusement Company. In this manner Emile, Jr., had made an actual money investment of some of his own funds in Buddy Enterprises, Inc. He was listed as president of Buddy Enterprises, Inc. The evidence shows that the ultimate *171 responsibility for running the business of Buddy Enterprises, Inc., rested with Emile, Sr., even though Emile, Jr., was listed as the company's president. However, Emile, Jr.'s major occupation was working for Buddy Enterprises, Inc., and he was an active salaried employee of that corporation. We are not called upon to determine whether Emile, Jr., in substance as well as in form was the owner of the entire 125 shares of stock of Buddy Enterprises, Inc., which were issued in his name. We conclude that he was in substance as well as in form the owner of some stock of that corporation, that he participated in the determinations that certain amounts would be paid to him or on his behalf, and in arranging for the so-called loan of $900 in 1959 to his wife. Under the facts here present we conclude that petitioners have shown that these payments to or on behalf of Emile, Jr., including the so-called loan to Emile, Jr.'s wife, did not constitute additional income of Emile, Sr., and Dolly in the years 1957, 1958, and 1959. Other adjustments made by respondent to the income of Emile, Sr., and Dolly have been either conceded or the issue raised by the pleadings abandoned. Buddy Enterprises, *172 Inc., has conceded or abandoned all issues raised by the pleadings in this case, except the issue with respect to the amount of unreported income arising from cigarette sales. The parties agree as to the total cigarette purchases which is an increase from the amounts reported on the returns of Buddy Enterprises, Inc., in each of the perios here involved since the amounts reported on the returns included only cigarettes purchased by check, and the parties agree on the inventory adjustments to be made to arrive at the cost of cigarettes sold. The only issue between the parties is the amount of cigarette losses that should be allowed prior to the application of the percentage mark-up used to determine sales, which likewise were understated on the returns since the receipts reported were only the remaining amounts turned in by the cigarette route manager after some portions thereof had been used to purchase cigarettes for cash and to pay for various items which in some instances did or in others did not constitute deductible expenses of Buddy Enterprises, Inc. Respondent allowed 1 percent of the cost of cigarettes sold for such "losses." Respondent's determination was apparently based *173 upon what respondent's agents considered to be the general experience in the industry. Petitioners offered evidence which convinces us that an amount somewhat greater than that allowed by respondent is justified. Some of the adjustments which petitioners contend should be made for cigarette losses are not properly adjustments to the cost of goods sold before the application of the mark-up. For instance, while we have concluded that some of the cash which was expended for gasoline used in Buddy Enterprises, Inc.'s business has not been deducted under expenses, petitioners on their returns in effect took such deduction by not reporting as sales any amount except the remaining cash brought in after amounts had been expended from the cash collections. When respondent increased petitioners' sales by computing them on a mark-up basis, all amounts of cash expenditures for items other than cigarettes, which were separately handled, were no longer in effect deducted. However, the fact that such expenditures were made would in no way mean that the deductions for these items should be made from the cost of cigarettes sold prior to the application of the mark-up. The proper method would be to *174 determine the amount of such cash expenditures which constituted proper business expenses and increase the deductible expenses by that amount. Any purchases of food or other such items made from this cash have not been shown to be properly deductible items by Buddy Enterprises, Inc. The cash used to purchase cigarettes, of course, would require no adjustment since respondent has been able from other sources to determine the amount so used and has applied the mark-up to these amounts which is proper since these cigarettes, just as those purchased by check, were resold. The only overstatement with respect to any cigarettes which may have been sold at wholesale is the amount of the mark-up since the amount received for these cigarettes which was the cost of such cigarettes to Buddy Enterprises, Inc., was placed in with the other cash received from the sale of cigarettes. Where cigarettes or the money in the machine were taken when machines were broken into, an adjustment should be made (as did respondent in the adjustment for 1 percent loss which he made to the cost of the cigarettes sold) prior to applying the mark-up since petitioners recovered neither the cost of the cigarettes in *175 such a situation nor any mark-up which would be represented by the cash which was taken. From the evidence we have concluded that there was somewhat more losses by petitioners from the taking of cigarettes and cash from the machines than would be represented by the 1 percent of cost of cigarettes sold allowed by respondent as "losses." The witnesses gave varying estimates of the number of times machines were broken into per year. We conclude from this evidence that during the two taxable periods of Buddy Enterprises, Inc., here involved there were at least 20 such instances in each period. We also conclude from the evidence that whereas different machines have different numbers of cigarettes that the average machine when filled would hold approximately 450 packs of cigarettes or 45 cartons. It is obvious therefore that at an average cost of $2.35 a carton which both parties seem to accept, and the average number of cigarettes which would be in a full machine that 20 breakingins and taking of all the cigarettes and money in the machine would result in a loss in each taxable period of $2,115 if every machine which was broken into was filled with cigarettes or had been filled prior to *176 money being used to purchase cigarettes from the machine. The testimony, however, shows that because certain brands of cigarettes were less popular than others and the machines were filled by columns that the machines immediately after being serviced, were not filled to capacity with cigarettes. There is nothing in the evidence to show precisely to what extent the average machine was filled and certainly nothing to show the extent to which the machines which were broken into had been filled prior to the unlawful taking of the cigarettes and money from the machine. Considering the evidence as a whole we have concluded that an adjustment of $1,800 in each of the taxable periods of Buddy Enterprises, Inc., here in issue is allowable as a reduction of the cost of goods sold prior to the mark-up application in compensation not only for the cigarette losses by the unlawful taking of cigarettes and money from the cigarette machines, but also for the loss of mark-up on any cigarettes which were sold at their cost to Buddy Enterprises, Inc., and the failure to deduct any proper expenses, other than cigarette purchases which have been independently allowed as a deduction, paid by cash. The amount *177 of $1,800 is of necessity an approximation based on the evidence as a whole. The $1,800 is not in addition to the 1 percent loss allowance by respondent in his determination in each of the taxable periods of Buddy Enterprises, Inc., here involved, but is to be substituted in lieu of the 1 percent loss allowed by respondent. Apparently petitioners do not contest the additions to the tax determined by respondent under section 6653(a) of the Internal Revenue Code of 1954. This section provides that if any portion of any underpayment of income tax is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. In any event petitioners have failed to show error in respondent's determination of such addition to tax and insofar as petitioner Buddy Enterprises, Inc., is concerned, the record affirmatively shows that the records of that corporation were not adequate and complete records and were negligently kept. Because of petitioners' failure of proof, we sustain respondent's determination of addition to tax under section 6653(a) of the Internal Revenue Code *178 of 1954 with respect to each petitioner and each taxable period involved. The proper amount of such addition may be computed under Rule 50 when the deficiencies on the basis of our holding herein have been recomputed. Decision will be entered under Rule 50. Footnotes
1. For the calendar year 1958 in which the taxable portion of the withdrawals is limited by available earnings and profits, this conclusion might have been contested by respondent and thus presented as an issue in this case. However, we interpret respondent's statement at the trial to concede the deductibility in full of the interest but merely to question the amounts paid. We therefore have only a factual issue here raised.↩