McBRIETY ET UX. *v.* SPEAR ET UX.

[No. 196, October Term, 1947.]

222

*Decided July 20, 1948.*

·The· cause ·was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

Submitted on brief by *McBriety & Mace* and *Frederick P. McBriety* for the appellants.

Submitted on brief by *Brinsfield & Malkus* for the appellees.

GRASON, J., delivered the opinion of the Court.

On February 4, 1947, Henry V. Spear was an infant under the age of twenty-one years, and did not attain his majority until September following. He was married to Eva M. Spear, who was of age, and these young people were the parents of one child. Spear served in the late war. They were having considerable difficulty in getting a place to live.

Spear went to see Frederick P. McBriety, who was at that time engaged in developing a property located in Cambridge, Maryland. McBriety told him he could not rent the houses he was building, because he had to sell them in order to get money to continue the development. There was a house in the course of erection at that time. Mrs. Lucile H. McBriety, the wife of Frederick P. McBriety, proposed to buy this lot of ground and the house that was being erected thereon from her husband, and sell it to Spear. Spear evidently had very little money, and it was proposed that the purchase of the property be financed by a loan thereon to Spear, secured by him under the Servicemen's Readjustment Act of 1944, 38 U. S. C. A. § 693 et seq. It was suggested that pending the obtention of the loan by Spear the property, when ready for occupancy, would be rented to Spear for six months, or until he secured the loan.

As a result of this conference a contract of sale was drawn and executed on February 4, 1947. It was signed by Mrs. McBriety and Spear, as well as by Mr. McBriety and Mrs. Spear. It provided that the property was to be sold "At and for the price of Five thousand two hundred and fifty Dollars, of which one hundred and fifty Dollars, have been paid prior to the signing hereof and the balance to be paid as follows: When Veteran's loan

presently to be applied for is approved and ready for disbursement." On the same day Mrs. McBriety signed a letter to Spear, in which she agreed to rent the property covered by the contract of sale to him for a term of six months, the term commencing on the date that the house was completed. In this letter she acknowledged the payment from Spear to her of $300 as prepayment for the rent of the property during the six months' term.

The house was completed and ready for occupancy on April 1, 1947, when the Spears moved in and took possession. In August, 1947, Spear notified McBriety that he was going to disaffirm the contract, and demanded repayment to him by Mrs. McBriety of the payment he made to her of $150 at the time of the signing of the contract of sale. The Spears moved out of this property at the end of September, 1947.

On August 19, 1947, McBriety and his wife filed a bill of complaint in the Circuit Court for Dorchester County, in Equity, setting out the facts narrated, and other matters which we need not refer to, and prayed that the deposit of $150, to which we have referred, be decreed to have been "forfeited as liquidated damages". There are other prayers in the bill, to which we need not refer.

Defendants answered, testimony was taken, the case heard and considered, and the chancellor, by his decree, dismissed the bill of complaint, and further decreed "that the complainants refund and pay unto the Defendants the sum of One Hundred Fifty Dollars ($150.00), * * * and pay the costs of these proceedings". The plaintiffs appealed.

It was stipulated by the parties, that the only issue before the chancellor was "whether the $150.00 deposit made by the defendants as described in Complainants' Exhibit "A" (the contract of sale) should be returned to the defendants or be retained by the plaintiffs as liquidated damages".

Spear testified: "After I was there the first two months the rafters overhead started warping. That bent and broke the wallboard overhead. I informed Mr. Mc-

Briety about it. He had it fixed; had the rafters over-head spliced. I think there is three or four rafters spliced. I think there is two in the bedroom and one in the living room. That rafter is sawed half in two. They have the rafter tacked up to the ceiling with a piece of floor." On cross examination he was asked by Mr. Mc-Briety (who represented himself and his wife) Q. "You knew the house was built of green lumber? A. You didn't tell me it was built of green lumber."

McBriety testified that three or four days before the contract was signed, when Spear came to their residence to try to rent a house from them, "Mrs. McBriety said to Henry Spear '1 will buy the house from my husband on Leonard Lane if it will accommodate you. It will not be ready to occupy until about April 1st. Of the $450.00 you have paid me on No. 9 Cherry Street, I will rent you the house for six months for $300.00; the remaining $150.00 can be your deposit on the purchase price of the house on Leonard Lane. When you become twenty-one years of age it is my understanding you will apply for a mortgage to be guaranteed by the Veteran's Administration for the balance of the purchase price of the property on Leonard Lane.' "

So what we have in this case is a contract made by a minor to buy a house and lot when he became of age, if he could obtain a loan from the Veteran's Administration for the balance of the purchase price, to wit, $5100. Mention has been made in the briefs of the Act of the General Assembly of Maryland, 1947, Chapter 13, which was approved February 14, 1947. This Act was passed for the purpose of enabling veterans who are minors to receive the benefits of the Servicemen's Readjustment Act of 1944. The contract of sale in this case was executed before this Act was passed, and it is perfectly plain that the parties did not contemplate that a future law would have anything to do with, or at all govern, this transaction. The contract was to be consummated when the minor became of age. The case before us involves a contract for the sale of land, entered into by adults with one

whom they knew to be under the age of twenty-one years; and would not attain that age for seven months thereafter; and it was the clear intention of the parties that this contract was not to be consummated until the minor attained full legal age.

It is a general rule of law, if an adult enters into a contract with an infant for the sale of real estate such a contract is voidable. It can be disaffirmed by the infant within a reasonable time after he attains the age of twenty-one years. Upon such disaffirmance the contract becomes null and void *ab initio,* and the vendor is bound to repay all money that he has received under the contract from the minor. In such circumstances the law declares that there has been no consideration passing from the vendor to the minor vendee for the money received from him under the contract. *Berryman v. Highway Trailer Co.,* 307 Ill. App. 480, 30 N. E. 2d 761; *Wharen v. Funk,* 152 Pa. Super. 133, 31 A. 2d 450; *Prudential Bldg. & Loan Ass'n v. Shaw,* 119 Tex. 228, 26 S. W. 2d 168, 27 S. W. 157; *Peterson v. Weimar,* 181 Wis. 231, 194 N. W. 346; *Crowley v. Mutual Finance Corporation,* 242 Mass. 259, 136 N. E. 179; *Godfrey v. Mutual Finance Corporation,* 242 Mass. 197, 136 N. E. 178; 43 *C. J. S., Infants,* § 75, at page 176; 27 *Am. Jur.,* sec. 35, page 773; *Adamowski v. Curtiss-Wright Flying Service, Inc.,* 300 Mass. 281, 15 N. E. 2d 467; *Williston on Contract,* Rev. Ed., Vol. 1, pages 709, 710.

In the case of *Amey v. Cockey,* 73 Md. 297, 20 A. 1071, this court recognized that an infant is compelled to do that which the law requires him to do, and it also recognized the rule of disaffirmance by an infant in cases of voidable contracts. At page 306 of 73 Md., at page 1073 of 20 A., it is said:

"But, from the time of the removal of such disabilities, she was required to take action for the disaffirmance of the deed within a reasonable time."

The appellants quote *Steinberg v. Scala* [1923] Law Reports, 2 Chancery Division. In that case an infant purchased stock on margin, which was registered in her

name for at least eighteen months. The price of the stock declined and she disaffirmed the contract. The court declared the contract void, but refused to allow her the difference between the price at which the stock was purchased and the price at which it was selling at the time of disaffirmance. In the instant case the appellants suffered no loss by reason of the disaffirmance of the contract by the infant.

The evidence shows that on October 13, 1947, the appellants in this case sold the property covered by the contract here involved to a third party for the sum of $5250. This is the price named in the contract in this case. McBriety claimed he did suffer some loss, but it was only a general statement, and not a single item showing a loss in dollars and cents was mentioned by him. If any loss was suffered, it was probably so little as to be immaterial.

In *Godfrey v. Mutual Finance Corporation, supra,* it was held that a contract by an infant to purchase corporate stock and a voting trust certificate for corporate stock was voidable and could be disaffirmed by the infant; and, the infant could recover the amount paid therefor without any allowance for the corporation's impairment of capital, as the contract, upon disaffirmance, became void from its inception. We think that the contract in the case at bar, upon disaffirmance became void *ab initio.*

It is contended that the $150 paid by appellees at the time of the signing of the contract in question is to be treated as liquidated damages. This is without force. The contract does not provide for liquidated damages, and, even if it did so provide, the infant could disaffirm it. The cases cited on the appellants' brief have no application to the facts of this case.

The appellants call attention in their brief to the fact that Mrs. Spear was of age, and assert she is liable under the contract. The fact that Mrs. Spear was of age did not affect her husband's right as a minor to disaffirm the contract and to recover money he had paid on account of the same.

In the case of *Wharen v. Funk, supra,* a husband (adult) and wife (infant) entered into a contract for the purchase of real estate. Upon attaining her majority the wife disaffirmed the contract. It was held in that case that the infant was entitled to recover all money paid by her under the contract. In the case at bar the proof shows that the infant paid the $150 on account of the purchase price of the property mentioned in the contract.

For the reasons given above, we hold that the decree of the learned chancellor must be affirmed.

*Judgment affirmed, with costs to appellees.*

MARBURY, C. J., filed the following dissenting opinion.

I agree with the argument and the result but it seems to me the court used an extraordinary method of reaching that result. After dismissing the bill of complaint, a money decree in favor of the defendants was passed. The proper and usual procedure would be to declare that the deposit belonged to the defendants and not to the appellants, and then to order its payment. When the bill is dismissed, the case has gone. The decree should be reversed so that the proper procedure should be adopted. I am unwilling to appear to approve the unorthodox method used by the chancellor.