JAMES A. PARFREY and PATRICIA PARFREY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Parfrey v. Commissioner
Docket No. 7627-82.
United States Tax Court
T.C. Memo 1983-756; 1983 Tax Ct. Memo LEXIS 31; 47 T.C.M. (CCH) 689; T.C.M. (RIA) 83756; December 19, 1983. Thomas J. Renner, for the petitioners. Clare J. Brooks, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $18,041 in petitioners' 1979 Federal income tax. The issues are: (1) whether a distribution by petitioner James A. Parfrey's solely owned corporation was a dividend or a loan; (2) whether interest earned on *32 the proceeds of that distribution is taxable to petitioners or to their children. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners resided in Bel Air, Md., when they filed their petition herein. All further references to petitioner (in the singular form) shall be to James A. Parfrey. Petitioner is president and sole shareholder of J.A. Parfrey Company, Inc. (the corporation). Patricia Parfrey, petitioner's wife, is the corporation's secretary and bookkeeper. The corporation's net earnings after taxes and its retained earnings since its incorporation on January 1, 1973, are as follows: Year ended
Net income
Retained earnings
4/30/73
$3,873
$3,873
4/30/74
18,066
21,939
4/30/75
10,144
32,053
4/30/76
13,754
45,807
4/30/77
8,888
54,695
4/30/78
25,800
80,495
4/30/79
70,989
151,283
No dividends were paid by the corporation prior to its fiscal year ending April 30, 1979 (fiscal year 1979); in that year, the company paid a $200 dividend. The corporation's officers (the petitioners) received salaries in fiscal year 1979 totaling $82,281; petitioner's salary was $74,925, while Patricia Parfrey's *33 salary was $7,356. The corporation is engaged as a subcontractor in the concrete construction business. To maintain a good credit rating, and thus stay in business, the corporation had to maintain significant liquid reserves to meet its obligations in the face of delinquent payments by its creditors. The corporation's net income rose substantially in fiscal year 1979 and consequently its retained earnings nearly doubled. After reading an article in a business periodical and consulting his accountant, Donald A. Hiltner (Hiltner), as to the tax consequences, petitioner decided to have the corporation loan $20,000 to each of his two children, James A. Parfrey, Jr. (James, Jr.), then age 12, and Jon M. Parfrey (Jon), then age 11. His purpose in having these loans made was to generate income for the college education of his children, which income he believed would be that of the children and taxed at a lower rate. On December 22, 1978, at petitioner's direction, James, Jr., signed a promissory note in the amount of $20,000, payable without interest to the corporation on or before July 31, 1983. Jon, also at petitioner's direction, signed a similar note, with the same terms, *34 on the same day. No security was provided for either of the notes. On January 5, 1979, the corporation issued a check for $60,000 to the Equitable Trust Company (Equitable). On January 8, 1979, Equitable issued two six-month certificates of deposit (CDs), bearing interest at 9.55 percent, as follows: one $20,000 CD in the names of petitioner and Jon, minor; one $20,000 CD in the names of petitioner and James, Jr., minor; and two $10,000 CDs in the corporation's name. [1] The signature cards corresponding to the two $20,000 CDs state that petitioner held the proceeds "in trust for" his children. [2]Equitable required petitioner to set up the account in trust form because the children were minors. No other trust instruments were executed. *35 Initially, because of a misunderstanding on the part of Hiltner, the corporation carried the $40,000 representing the notes of James, Jr., and Jon on its books in its general ledger account as "Loans Receivable Employees & Officers." [3] On April 30, 1980, a new general ledger account, "Notes Receivable," was opened and a $40,000 debit was entered thereon, with an adjusting transfer made to the "Loans Receivable Employees & Officers" account. The corporation's balance sheets for 1979, 1980, and 1981 listed the loans as "current assets." As the two $20,000 CDs matured, the principal plus interest was rolled over into new six-month CDs. James, Jr., was killed on May 19, 1980. The CD in his name that expired on July 8, 1980, was rolled over by petitioner, acting as personal representative for the Estate of James A. Parfrey, Jr. (the estate), for another six-month term. On February 10, 1981, the *36 estate paid the corporation $20,000 in settlement of the corporation's "claim" filed against the estate. OPINION The first issue for decision is whether the $40,000 withdrawal from the corporation was a loan, either to petitioner or to his children, or a dividend taxable to petitioners under sections 301 and 316. [4]
Respondent contends that the withdrawal was a dividend because petitioner controlled the corporation, no interest was charged, no security was given for the loans, and no dividends had yet been declared by the corporation. Petitioner argues, on the other hand, that the withdrawal was a bona fide loan because promissory notes were issued, the withdrawal was consistently treated on the corporation's books and records as a loan, the children had a continuing ability to repay the loan, petitioner designed the transaction to shift income to lower-bracket taxpayers, and the loan to James, Jr., was repaid after his death.
It is clear that *37 where a closely held family corporation is involved, particularly where a sole shareholder is in complete control, the transaction must be closely scrutinized. Baird v. Commissioner,25 T.C. 387 (1955). On the other hand, it is equally clear that the presence of sole-shareholder control is not, in and of itself, sufficient to justify a refusal to find that a bona fide loan existed. White v. Commissioner,17 T.C. 1562 (1952); Faitoute v. Commissioner,38 B.T.A. 32 (1938); Wiese v. Commissioner,35 B.T.A. 701 (1937), affd. 93 F.2d 921 (8th Cir. 1938). The form of the transaction is not determinative, although the presence or absence of such elements as notes, interest, and security are elements to be taken into account. Miele v. Commissioner,56 T.C. 556, 567-569 (1971), affd. without published opinion 474 F.2d 1338 (3d Cir. 1973). The controlling factor is whether, at the time the withdrawal was made, it was intended that the amount withdrawn would be repaid. [5]Pierce v. Commissioner,61 T.C. 424, 430 (1974). See also 1 Mertens, Law of Federal Income Taxation, *38 sec. 9.21, p. 64 (1981), and cases cited therein. Intent is determined from all the facts and circumstances. Dean v. Commissioner,57 T.C. 32 (1971). The burden of proof is on petitioners. Miele v. Commissioner,supra; Rule 142(a). On the record before us, we think petitioners have carried their burden. The fact of the matter is that the formalities were scrupulously observed. The amounts were always treated as loans on the books and records of the corporation, although there was initially some confusion as to who was the borrower. See pp. 4-5, supra. There were notes. They had a fixed due date. To be sure, that date was subsequent to the time of trial herein, so that the element of actual payment or payments on account (which is an important element in the decided cases) is not present. On the other hand, *39 the due date was not picked out of thin air but was keyed to the time when each of the children would be nearing college entrance age. Moreover, there was evidence of repayment of James, Jr.'s loan after his death (when the need for the funds for his education no longer existed) and shortly after the normal time for creditors to file claims against his estate had expired. [6]
The fact that the proceeds were put in six-month certificates of deposit provided a ready means of earlier repayment of the notes if the corporation needed the money. We attach no significance to the fact that the CDs were not formally used to collateralize the notes. Given petitioner's control over both sides of the transaction and its future implementation, we think that, as a practical matter, the notes were secured by the CDs whose value would remain constant at face.
Nor do we think we should speculate that, because the cost of each child's education would likely be in excess of the accumulated income on the CDs, the petitioner would see *40 to it that the notes were not enforced so that the principal of the CDs could be used. The accumulated income over a five-year period would have exceeded $10,000 for each child -- a not insignificant amount to be applied toward his education. The long and short of the matter is that there are sufficient objective elements in this record to support petitioner's testimony that he clearly intended that the notes be repaid.[7] We found petitioner to be a forthright and credible witness. Under these circumstances, if we were not to accept his testimony, we think we would be violating the rule that control by a sole shareholder per se is not determinative that a distribution is a dividend and not a loan (a rule long ago established, see Faitoute v. Commissioner,supra;Wiese v. Commissioner,supra) and would be concluding that the presence of a tax minimization objective in and of itself precludes the possibility of a loan even though there was also a legitimate non-tax purpose, i.e., accumulation of income for the education of petitioner's children. This we are not prepared to do, see Goldstein v. Commissioner,364 F.2d 734, 738-740 (2d Cir. 1966), *41 although we are constrained to observe that, without the tax benefit conferred on interest-free loans by Dean v. Commissioner,35 T.C. 1083 (1961), and its progeny (see, e.g., Hardee v. United States,708 F.2d 661 (Fed. Cir. 1983); Suttle v. Commissioner,625 F.2d 1127 (4th Cir. 1980), affg. a Memorandum Opinion of this Court; Baker v. Commissioner,75 T.C. 166 (1980), affd. per curiam 677 F.2d 11 (2d Cir. 1982)), the transaction constructed by petitioner would not have been anywhere near as financially viable. We hold that the two $20,000 distributions were loans and not dividends. However, we think that the complete control by petitioner over the proceeds of the loans and the disposition of the proceeds negates the form of the notes and that, for tax purposes, the transaction was realistically a loan of $40,000 to petitioner, who then proceeded to transfer the funds to his children. [8]
*42 Petitioner cites several cases in which corporate loans to third parties have been recognized by this Court. However, in none of those cases was this Court asked to determine that the taxpayer's control of the proceeds of the "loans to third parties" required rejection of the form in which the transaction was cast. In Kalil v. Commissioner,T.C. Memo. 1965-175, a corporation "run" by the husband-taxpayer made loans to the taxpayers' adult son, who was president of the corporation and who controlled the loan proceeds. In Maloney v. Commissioner,T.C. Memo. 1958-39, the loans were to an unrelated third party (the father of an old acquaintance of the taxpayer) who controlled the loan proceeds. Finally, in Jack M. Bass & Co. v. Commissioner,T.C. Memo. 1957-208 respondent contended that advances to the corporation's president, his wife, who owned over 99 percent of the corporation's stock, and their minor child were not loans and the income derived from the use of the proceeds was taxable to the corporation. Respondent did not contend that if the Court found the advances to be loans, each individual should not be recognized as the *43 borrower of the amount advanced for his or her account. Consequently, each of those cases is distinguishable. This brings us to the second issue, namely, are petitioner or his children taxable on the income produced by the CDs in which the loan proceeds were invested? The trust accounts into which the loan proceeds were placed were, under Maryland law, revocable trusts, because the funds in the trusts were subject only to petitioner's order. [9] See Allers v. Leitch,213 Md. 390, 131 A.2d 458 (1957); Mushaw v. Mushaw,183 Md. 511, 39 A.2d 465 (1944); Bollack v. Bollack,169 Md. 407, 182 A. 317 (1936). Cf. Md. Est. & Trusts Code Ann. sec. 13-302 (1974). Since petitioner placed the funds into the revocable trusts, the income is clearly taxable to him under the grantor trust rules. See section 676(a). See generally Rev. Rul. 62-148, 1962-2 C.B. 153. *44 Decision will be entered under Rule 155.
Footnotes
1. These two CDs, not at issue in this case, were redeemed on July 16, 1979. ↩
2. The signature cards for the two trust accounts provided in full as follows: (1) Account number 046-420-008-0: James A. Parfrey in trust for himself and Jon M. Parfrey, (minor), subject only to the order of James A. Parfrey, and upon his death to order of minor's legal guardian until minor attains legal age, then to Jon's order. (2) Account number 046-420-009-2: James A. Parfrey in trust for       self, and James A. Parfrey, Jr.,↩ (minor), subject only to the order of       and upon       death to order of minor's legal guardian, until minor attains legal age, then to       order.
3. The corporation's 1979 income tax return listed $42,400 in loans to stockholders. The 1979 financial statement showed "Accounts receivable - officer" at $2,400 and "Notes receivable" at $40,000. For later years, the corporation consistently treated the loans as "Notes receivable."↩
4. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue and all references to Rules are to the Tax Court Rules of Practice and Procedure.↩
5. Although the notes were executed by each of petitioner's children, it is clear that they did so at petitioner's direction and petitioner admitted that the children would at all relevant times have done what he wanted them to do. Therefore, our inquiry is directed to petitioner's intent and not to that of the children.↩
6. The normal time is six months after the appointment of a personal representative. Md. Est. & Trusts Code Ann. sec. 8-108↩ (1974).
7. Cf. Estate of Lear v. Commissioner,T.C. Memo. 1981-432↩.
8. We recognize that petitioner may not be personally obligated to repay the borrowed funds to the corporation. We are satisfied, however, that under Maryland law the obligation of the children on the notes was only voidable (not void) and that, even if they sought to disavow the loans, they would be required to return the proceeds which were maintained intact in the certificates of deposit. See McBriety v. Spear,191 Md. 221, 60 A.2d 528 (1948); Adams v. Beall,67 Md. 53, 8 A. 664 (1887). See also Crown Cork & Seal Co. v. Fankhanel,49 F. Supp. 611↩ (D. Md. 1943); General Revisor's Note to Maryland Commercial Code, Ann. Code of Md. Sec. 10-104 (1975). Thus, the corporation would in one way or another be repaid the borrowed funds.
9. Petitioner's contention that the only reason the trust form was used was because the bank required it is insufficient to establish that the contracts entered into between petitioner and the bank was anything other than revocable trusts, especially since, pursuant to the terms of the contract, the children had no right to the trust funds prior to attaining legal age.↩