[No. B045279. Second Dist., Div. Five. Sept. 18, 1991.]

MEDICAL LEGAL CONSULTING SERVICES, INC., Plaintiff and Appellant, v.
LINDA COVARRUBIAS et al., Defendants and Respondents.

**COUNSEL**

Donald B. Caffray for Plaintiff and Appellant.

Peter J. McNulty and Steven C. Gambardella for Defendants and Respondents.

## OPINION

### TURNER, P. J.—

#### I. INTRODUCTION

Medical Legal Consulting Services, Inc. (MLCS), a corporation headquartered in Maryland, appeals from that part of an order of the Los Angeles Superior Court refusing to enforce a Maryland judgment against a minor's parents acting as guardians ad litem who resided in California. Because we are required by the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, § 1) to uphold the Maryland judgment, the order under review is reversed insofar as it refuses to enforce the Maryland court's judgment against the minor's guardians.

#### II. PROCEDURAL AND FACTUAL MATTERS

On May 4, 1983, Jason Lugo (the minor), through his parents Linda Covarrubias (Covarrubias) and Phillip Lugo (Lugo), who were appointed by the Los Angeles Superior Court as guardians ad litem, filed suit for medical malpractice against White Memorial Hospital and several physicians. In order to assist their attorney in preparing what was a complex medical malpractice case, Covarrubias and Lugo entered into an agreement with MLCS to provide legal advice in connection with the pending Los Angeles Superior Court case. Under the terms of the contract, MLCS was obligated to produce a "Medicolegal Case Analysis," conduct an initial medicolegal strategy and teaching conference, assist in the preparation for depositions and of "technical medical aspects of interrogatories," recommend and assist "in expert witness selection," consult and assist in preparation of expert witnesses, search and abstract medical literature, and assist in settlement conferences and trial preparation. The contract did not require MLCS or any of its employees to provide testimony as expert witnesses. The contract specifically provided that expert witness fees would be paid on an hourly or per diem basis and not on a contingency basis. MLCS was to be compensated under a contingency arrangement. If the case settled, MLCS was to receive 10 percent of the settlement. If the minor's suit in Los Angeles Superior Court was resolved by trial, MLCS was to receive 15 percent of the verdict. The contract further stated the laws of the State of Maryland would control interpretation of the agreement and "the court of competent jurisdiction for any dispute arising out of or related to this contract is the Circuit Court of Montgomery County, State of Maryland." The agreement was signed by Covarrubias and Lugo individually, and as the minor's guardians as well as by their attorney. On October 27, 1983, the agreement was signed

by the president of MLCS. On August 24, 1984, the minor's medical malpractice suit settled. The minor was to receive a lifetime annuity, an immediate payment of $200,965, 2 lump sum payments of $500,000 25 and 50 years after the August 24, 1984, settlement, and costs in the sum of $8,750. The minor's attorney was to be paid $91,675 immediately and $601,586 six years from the date of the settlement. Covarrubias was to receive $75,000 and Lugo received $25,000 as part of the settlement. Shortly after the case settled on August 24, 1984, Covarrubias, Lugo, and the attorney for the minor "decide[d] to terminate the consulting agreement with MLCS." Covarrubias stated that she "fired MLCS and did not pay" the fee based upon her attorney's advice.

On December 11, 1985, MLCS filed suit in Maryland in the Montgomery County Circuit Court against Covarrubias and Lugo individually, and as guardians ad litem for the minor. Covarrubias and Lugo, who were the guardians in the Los Angeles Superior Court medical malpractice case, were not reappointed as guardians ad litem in the Maryland suit. The minor, Covarrubias, and Lugo were represented by counsel in the Maryland suit. Multiple summary judgment motions filed by MLCS were granted. On July 23, 1987, judgment was entered in favor of MLCS and against Covarrubias and Lugo individually, and as guardians ad litem for the minor, in the sum of $157,500 plus interest of $28,305 and costs.

On August 6, 1987, in the Montgomery County Circuit Court, the guardians' counsel filed a motion to amend the judgment. The motion sought to delete any reference to Covarrubias or Lugo in their role as guardians in the judgment of July 23, 1987. The guardians' counsel argued that the Maryland courts had no jurisdiction over the proceeds of the California settlement. No issue was raised concerning the failure of the Montgomery County, Maryland Circuit Court to appoint a guardian ad litem for the minor. On August 9, 1987, the motion to amend the judgment was denied.

On November 11, 1987, Covarrubias and Lugo individually and as the minor's guardians appealed the judgment in favor of MLCS to the Special Court of Appeals for the State of Maryland. While the appeal was pending, the minor, through his guardians ad litem, and MLCS entered into a settlement of their dispute which was subject to the approval of a Los Angeles Superior Court judge because the proceeds of the August 24, 1984, settlement of the malpractice suit were in a blocked account. A petition to withdraw $100,000 from the $397,075.52 remaining in the blocked account on behalf of the minor was filed. Declarations were attached to the petition explaining the reasons for the request to withdraw the funds. On January 21, 1988, without any explanation, Los Angeles Superior Court Judge Richard

C. Hubbell denied the petition. On February 1, 1988, the Special Court of Appeals in Maryland dismissed the appeal from the judgment in favor of MLCS. As of February 1, 1988, the Maryland judgment was final and no appeal was pending.

On May 2, 1988, in Los Angeles Superior Court, pursuant to the Sister State Money Judgment Act (Code Civ. Proc., §§ 1710.10-1710.65), MLCS filed its application for entry of the July 23, 1987, Maryland judgment against Covarrubias and Lugo individually, and as the minor's guardians ad litem. A motion to vacate the Maryland judgment was filed on behalf of Covarrubias and Lugo individually, and as the minor's guardians ad litem. On August 11, 1989, Los Angeles Superior Court Judge David P. Yaffe denied the motion to vacate the Maryland judgment on behalf of Covarrubias and Lugo in their individual capacities. However, Judge Yaffe granted the motion to vacate the judgment as to Covarrubias and Lugo in their capacities as guardians for the minor. Judge Yaffe reasoned that the order appointing Covarrubias and Lugo as guardians ad litem, made in the medical malpractice suit, did not apply to the lawsuit filed by MLCS in Maryland. As a result, because no guardian ad litem was appointed in Maryland, under the laws of that state, no lawsuit could be pursued against the minor. Therefore, Judge Yaffe determined that the Maryland judgment was void and not entitled to full faith and credit under the United States Constitution. MLCS appealed from the order vacating the Maryland judgment against Covarrubias and Lugo in their capacities as guardians for the minor. Neither Covarrubias nor Lugo appealed from the order refusing to vacate the Maryland judgment against them in their individual capacities.

### III. Discussion

#### A. *The Parties' Contentions*

The minor's guardians contend that the Maryland judgment was unenforceable against Covarrubias and Lugo solely in their capacities as guardians ad litem because no guardian ad litem was authorized to represent him in the Maryland lawsuit filed by MLCS. As a result, the minor contends that the Maryland Circuit Court lacked jurisdiction to proceed against them. Because the Maryland court had no jurisdiction, the judgment was void under Maryland law and, as a result, was not entitled to full faith and credit. By contrast, MLCS contends that the Maryland Circuit Court had jurisdiction to impose a judgment against Covarrubias and Lugo as guardians ad litem because of their prior appointment by the Los Angeles Superior Court in the malpractice suit against White Memorial Hospital. MLCS relies upon Maryland Estates and Trusts Code Annotated section 13-222, subdivision (a)

which provides: "When no guardianship proceeding is pending in the state, a guardian, conservator, committee, or other similar fiduciary, appointed by the appropriate court of another jurisdiction to manage the property of a protected person who is a resident of that jurisdiction, may exercise in the state all powers of his office, including the power to sell, purchase, or mortgage real estate in the state, collect, receipt for, and take possession of money due, tangible personal property, or an instrument evidencing a debt, obligation, stock, or chose in action located in the state, and remove it to the other jurisdiction. Subject to any statute or rule relating to nonresidents, he may sue and be sued in the state." The minor's guardians countered by arguing as Judge Yaffe found that because the California medical malpractice suit had settled, the power of Covarrubias and Lugo to act as guardians ad litem had expired. (*Morris* v. *Standard Oil Co.* (1923) 192 Cal. 343, 348 [219 P. 998, 30 A.L.R. 1103]; *Cole* v. *Superior Court* (1883) 63 Cal. 86, 91.) Accordingly, the guardians ad litem contend that because they no longer had the power to act as guardians ad litem, there was no valid guardian appointed to represent them in the Maryland litigation brought by MLCS seeking to enforce the 1983 consulting agreement. Prior to submission of this case, at oral argument, we raised the question of whether the failure to have appointed a guardian was even relevant because the absence of an appointment of a guardian ad litem in Maryland was not a jurisdictional defect. Finally, the minor argues that even if no guardian ad litem had to be appointed or the California appointment was sufficient in the Maryland action, full faith and credit should be withheld because to enforce the Maryland judgment would violate fundamental California public policies.

B. *The Failure to Appoint a Guardian in Maryland Did Not Deprive the Montgomery County Circuit Court of Jurisdiction to Impose a Judgment Against Covarrubias and Lugo as Guardians for the Minor*

■ An out-of-state judgment rendered by a court without the jurisdiction to do so need not be accorded full faith and credit under article IV, section 1 of the federal Constitution. (*Underwriters Assur. Co.* v. *N. C. Guaranty Assn.* (1982) 455 U.S. 691, 705 [71 L.Ed.2d 558, 570-571, 102 S.Ct. 1357]; *Durfee* v. *Duke* (1963) 375 U.S. 106, 116 [11 L.Ed.2d 186, 193-194, 4 S.Ct.242].) ■ We conclude that the failure to have appointed a guardian was irrelevant because the absence of an appointment of a guardian ad litem is not a jurisdictional defect under Maryland or California law. ■ In cases involving full faith and credit issues, it is presumed that the first state to impose a judgment had jurisdiction over the parties. (*Milliken* v. *Meyer* (1940) 311 U.S. 457, 462 [85 L.Ed. 278, 282-283, 61 S.Ct. 339, 132 A.L.R. 1357].) ■ The failure to appoint a guardian ad litem for a minor who is

a defendant is not a jurisdictional defect under California law. (*Pacific Coast etc. Bank* v. *Clausen* (1937) 8 Cal.2d 364, 366 [65 P.2d 352]; *Childs* v. *Lanterman* (1894) 103 Cal. 387, 390-391 [37 P. 382]; *Kropp* v. *Sterling Sav. & Loan Assn.* (1970) 9 Cal.App.3d 1033, 1041 [88 Cal.Rptr. 878]; *Siegal* v. *Superior Court* (1962) 203 Cal.App.2d 22, 27 [21 Cal.Rptr. 348].) Moreover, the general rule throughout the United States is that the failure to appoint a guardian ad litem for a defendant who is a minor is not a defect which goes to the jurisdiction of the court. (42 Am.Jur.2d, Infants, § 171, pp. 158-160; 43 C.J.S., Infants, §§ 225-227, pp. 583-589.)

The Maryland courts have not spoken with as much clarity as other jurisdictions on this specific legal issue; however, our research indicates that, if called upon to decide the question of whether the failure to appoint a guardian ad litem for a minor who is a defendant is a jurisdictional defect under Maryland law, the courts in that state would conclude that the failure to appoint a guardian does not deprive a trial court of the jurisdiction to decide a legal dispute. In *Kemp* v. *Cook* (1861) 18 Md. 130, 138, the Maryland Court of Appeals, the state's highest court, held in a case where no guardian was appointed to represent a minor, "A judgment against an infant, is not void but voidable." In *Pendergast* v. *Young* (1947) 188 Md. 411 [53 A.2d 11, 13-14,] the Maryland Court of Appeals held that the failure to appoint a guardian ad litem in connection with a tax sale did not constitute a jurisdictional defect. In *Brothers* v. *Tilken* (1964) 236 Md. 267 [203 A.2d 702, 703], the Court of Appeals reviewed a case where a minor defendant was served with a summons and complaint but no guardian ad litem was appointed to represent her. A default judgment was entered and several years later, a coram nobis petition was filed. The Court of Appeals noted that the failure to appoint a guardian ad litem was not a jurisdictional defect which rendered the judgment void. The court held: "It will be noted that we are not dealing with a situation where there was no service of process upon the infant defendant; hence the trial court was not lacking jurisdiction in its fundamental sense. It is unquestionably true that an infant has a right, upon a showing of proper grounds, to impeach a judgment obtained against her during infancy [citations], but it is held, almost universally, that when the grounds for impeachment of such a judgment is merely an irregularity in its obtention, as in the case at bar, the judgment is not void, but voidable at the option of the infant." (*Ibid.*) In *Brothers*, the Court of Appeals relied upon its prior decision in *Kemp* v. *Cook, supra,* 18 Md. at page 138. No Maryland court has ever held that the failure to appoint a guardian ad litem for a minor who was a defendant constituted a jurisdictional defect. Therefore, regardless of the validity of the California appointment of guardians ad litem and

its effect pursuant to Maryland Estates and Trust Code Annotated, section 13-222, subdivision (a), the Maryland judgment was not subject to attack because it was made without jurisdiction.

The minor relies upon language in the Maryland Court of Appeals decision of *Bush etc.* v. *Linthicum* (1883) 59 Md. 344, 356, where the Court of Appeals held, "They all agree that while an infant may sue by his next friend, he cannot answer except by guardian appointed by the Court, but such guardian will always be appointed upon petition of the infant in his own name. [Citations.]" This language does not state that the failure to appoint a guardian ad litem is a jurisdictional defect. Under California law, it is mandatory that a guardian ad litem be appointed to represent a minor defendant. (Code Civ. Proc., § 372.) However, as previously noted, in California, the failure to appoint a guardian ad litem is not a jurisdictional defect. Similarly, under Maryland law, the appointment of a guardian ad litem is mandated by rule 205, subdivision (e)(1) of the Maryland Rules of Procedure. (*Ginnavan* v. *Silverstone* (1967) 246 Md. 500 [229 A.2d 124, 128-129].) However, as the Maryland authorities previously cited hold, the failure to appoint a guardian ad litem does not affect the jurisdiction of the court. Accordingly, we determined that the fact that the Montgomery County Circuit Court did not appoint a guardian ad litem did not deprive it of the jurisdiction to act against the minor's guardians. Therefore, full faith and credit cannot be denied on this ground.

■ In a related argument, the guardians contend that the minor had the power under Maryland law to disaffirm the contract entered into by his guardians on his behalf. To begin with, in the Maryland litigation, the minor's guardians chose not to disaffirm the contract. The case relied upon by the minor, *McBriety* v. *Spear* (1948) 191 Md. 221 [60 A.2d 528, 530], involved a case where a minor had disaffirmed a contract. At no time during the Maryland litigation in the present case did the guardians ad litem who were represented by counsel ever seek to disaffirm the MLCS contract. Additionally, in *McBriety*, there was no issue concerning the jurisdiction of the court. Accordingly, *McBriety* is not relevant authority in terms of the jurisdictional issue in the present case.

C. *No California Public Policy Bars According Full Faith and Credit to the Maryland Judgment*

■ The minor's guardians contend that the contract with MLCS is unenforceable because no judicial approval required for a minor's obligation was obtained, a contingency fee arrangement for the services to be performed under the agreement would be unenforceable, the agreement violated

California Business and Professions Code section 6146, which is part of the Medical Injury Compensation Reform Act (MICRA), and the MLCS contract has been disaffirmed. According to the minor's guardians, to enforce the Maryland judgment would violate important California policies. In *Tyus* v. *Tyus* (1984) 160 Cal.App.3d 789, 793 [206 Cal.Rptr. 817], Division Four of this appellate district described the very limited right of an enforcing state to refuse to uphold a sister state's judgment as follows: "The Restatement of Laws does not provide an exception for the recognition of sister state judgments which are merely against the public policy of the enforcing state. (See Rest.2d Conf. of Laws, §§ 93, 103-121.) An exception may rarely exist when the sister state judgments would interfere with 'important interests' of the enforcing state. (See *ibid.*, § 103.) However, a valid judgment will be enforced in another state 'even though the strong public policy of the latter [enforcing] State would have precluded recovery in its courts on the original claim.' (See *ibid.*, § 117.)"

In connection with money judgments, the United States Supreme Court has taken an even more narrow view of the right of an enforcing state to decline to accord full faith and credit to a sister state money judgment than that as expressed in section 103 of the Restatement Second of Conflict of Laws which was referred to in *Tyus*. The exception to the full faith and credit requirement premised upon a violation of the enforcing state's "important interest" (Rest.2d Conf. of Laws, § 103) is narrow in scope.[1] In *Morris* v. *Jones* (1947) 329 U.S. 545, 553 [91 L.Ed. 488, 497, 67 S.Ct. 451, 168 A.L.R. 656], the United States Supreme Court held that when there was no jurisdictional defect in cases involving an out of state judgment for money, exceptions to the full faith and credit requirement "have rarely, if ever, been read into the Constitution provision . . . ." In *Estin* v. *Estin* (1948) 334 U.S. 541, 545 [92 L.Ed. 1561, 1567, 68 S.Ct. 1213, 1 A.L.R.2d 1412], the court held, "The situations where a judgment of one State has been denied full faith and credit in another State, because its enforcement would contravene the latter's policy, have been few and far between." In *Milwaukee County* v. *M. E. White Co.* (1935) 296 U.S. 268, 275-276 [80 L.Ed. 220, 227, 56 S.Ct. 229], the

---

[1]Section 103 of the Restatement Second of Conflict of Laws states: "A judgment rendered in one State of the United States need not be recognized or enforced in a sister State if such recognition or enforcement is not required by the national policy of full faith and credit because it would involve an improper interference with important interests of the sister State." The comment to section 103 provides: "A sister State judgment whose recognition is required by full faith and credit and which is for the payment of money, must also, almost invariably, be enforced under the circumstances stated in § 100." (Rest.2d Conf. of Laws, § 103, com. a.) Section 100 of the Restatement Second of Conflict of Laws provides, "A valid judgment for the payment of money rendered in a State of the United States will be enforced in a sister State, except as stated in §§ 103-121." In other words, section 100, which provides for the rendition of full faith and credit to a money judgment, is subject to the exception in section 103 of the Restatement Second of Conflict of Laws.

Supreme Court held: "In a suit upon a money judgment for a civil cause of action the validity of the claim upon which it was founded is not open to inquiry, whatever its genesis. Regardless of the nature of the right which gave rise to it, the judgment is an obligation to pay money in the nature of a debt upon a specialty. Recovery upon it can be resisted only on the grounds that the court which rendered it was without jurisdiction, [citations]; or that it has ceased to be obligatory because of payment or other discharge; [citations]; or that it is a cause of action for which the state of the forum has not provided a court, [citations], unless it is compelled to do so by the privileges and immunities clause; [citations]; or possibly because procured by fraud, [citations]." In *Milwaukee County*, the Supreme Court did not list the enforcing state's "important interests" as an exception to the full faith and credit clause in the case of money judgments. Citing *Milwaukee County*, the court in *Magnolia Petroleum Co.* v. *Hunt* (1943) 320 U.S. 430, 438 [88 L.Ed. 149, 155, 64 S.Ct. 208, 150 A.L.R. 413], held: "Even though we assume for present purposes that the command of the Constitution and the statute is not all-embracing, and that there may be exceptional cases in which the judgment of one state may not override the laws and policy of another, this Court is the final arbiter of the extent of the exceptions. [Citations.] And we pointed out in *Williams* v. *North Carolina* [(1942) 317 U.S. 287, 295 (87 L.Ed. 279, 284, 63 S.Ct. 207, 143 A.L.R. 1273)], that 'the actual exceptions have been few and far between. . . .' [¶] We are aware of no such exception in the case of a money judgment rendered in a civil suit. Nor are we aware of any considerations of local policy or law which could rightly be deemed to impair the force and effect which the full faith and credit clause . . . require to be given to such a judgment outside the state of its rendition." (Fn. omitted.) Accordingly, the judgment in the present case, which is a money judgment, does not appear based upon presently existing United State Supreme Court authority to be subject to the "important interest" exception found in the Restatement Second of Conflict of Laws section 103. On this basis, the minor's guardians' contentions concerning important California interests must be rejected.

■ Even if the "fundamental interest" exception was applicable to a money judgment, no such interest are present in this case. First, although California certainly has a state policy protecting minors, it is not a fundamental interest of the nature which would warrant this court in failing to accord full faith and credit to the Maryland judgment. ■ An exception to the full faith and credit clause does occur in the case of custody and support orders arising in a marital dissolution context. (*Ford* v. *Ford* (1962) 371 U.S. 187, 192-194 [9 L.Ed.2d 240, 243-245, 83 S.Ct. 273].) However, it is previously noted, to date the United States Supreme Court has not applied

that exception to the full faith and credit clause to money judgments; rather, it is always been applied to strictly custody and support orders. Nonetheless, there is no factual basis for concluding that California's concern for the interest of minors warrants a refusal to enforce the Maryland judgment. The sole justification offered by the minor's guardians and their counsel for refusing to comply with their obligations under the consulting agreement was that they simply decided not to pay MLCS. There was no evidence which indicated that any fraud had occurred, MLCS had violated the terms of its contract, or that any unjust enrichment would result from enforcement of the Maryland judgment. Accordingly, even if the fundamental interest exception to the full faith and credit clause were to apply to a money judgment, the fact that the Maryland judgment was imposed against Covarrubias and Lugo in their role as the minor's guardians does not justify this court in failing to accord full faith and credit to the Maryland judgment.

 Second, there is no important California interest which has been contravened because of the contingency fee arrangement in the present case. No doubt, there are circumstances where a contingency arrangement relating to obtaining testimony contravenes California public policy. (*Williamson* v. *Superior Court* (1978) 21 Cal.3d 829, 836-838 [148 Cal.Rptr. 39, 582 P.2d 126]; *Von Kesler* v. *Baker* (1933) 131 Cal.App. 654, 657-658 [21 P.2d 1017].) In the present case, there is no evidence that any employee of MLCS ever sought to procure any false testimony on behalf of the minor and the contract explicitly provided that no MLCS employees were to be paid for any expert testimony on a contingency basis. Accordingly, the factual predicate for the minor's guardians' argument, that the contingency arrangement of the present case was calculated to lead to the production of some form of perjured testimony, is without any factual basis and no fundamental interest of California is contravened by enforcement of the Maryland judgment.

 Third, the minor's guardians contend that the contract in the present case would violate the limitations on payments to attorneys permitted by MICRA. We conclude that MICRA is not of such an important interest to constitutionally allow California to refuse to enforce the Maryland judgment. We have been unable to find any authority which suggests that a statute limiting tort recovery in medical malpractice cases is an interest of such importance to constitutionally permit one state to refuse to enforce a judgment of another state's court. Finally, the minor contends that this court should not enforce the Maryland judgment because the minor has disaffirmed the contract. To begin with, this is an argument that could have been raised in the Maryland litigation and the failure to do so bars it being raised in the present case. (*Tyus* v. *Tyus*, *supra*, 160 Cal.App.3d at p. 792.) In

any event, the right of a minor to disaffirm a contract is not a state interest of sufficient importance to warrant not enforcing the Maryland judgment. Accordingly, none of the interests asserted by the minor's guardians as a basis for refusing to enforce the Montgomery County Circuit Court judgment have any merit.

## IV. DISPOSITION

That part of the order of August 1, 1989, refusing to enforce a judgment of July 23, 1987, of the Montgomery County Circuit Court against Linda Covarrubias, as the guardian ad litem for Jason Lugo and Phillip Lugo, as the guardian ad litem for Jason Lugo is reversed. The Los Angeles County Superior Court is directed to issue an order allowing for enforcement of the Montgomery County Circuit Court judgment pursuant to the Sister State Money Judgment Act in favor of Medical Legal Consulting Services, Inc., jointly and severally against Linda Covarrubias, individually and as guardian ad litem for Jason Lugo and Phillip Lugo, individually and as guardian ad litem for Jason Lugo. The July 23, 1987, judgment of the Montgomery County Circuit Court shall be enforceable as a California judgment. Medical Legal Consulting Services, Inc., shall recover its costs on appeal from Linda Covarrubias, acting as guardian for Jason Lugo and Phillip Lugo, acting as guardian for Jason Lugo.

Ashby, J., and Grignon, J., concurred.