Filed 4/19/21  Sulley-Black v. Johnson CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ELIZABETH SULLEY-BLACK, as Trustee, etc., Plaintiff and Respondent, v. KENNETH E. JOHNSON, Defendant and Appellant. | G058565 (Super. Ct. No. 30-2017-00912887) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David L. Belz, Judge.  Affirmed.

SoCal Law Group and James Dean Mortensen for Defendant and Appellant.

Hart King, Andrew C. Kienle and Rhonda H. Mehlman for Plaintiff and Respondent.

\*       \*       \*

A married couple created a trust to hold and manage their property.  After the husband died, the wife married her long-term boyfriend and then developed dementia.

Over the next few years, the second husband arranged for the trust to reimburse him hundreds of thousands of dollars in expenses.  The wife's adult daughter eventually learned of this and filed a petition under Probate Code section 850 (§ 850) to recover real estate and other assets, accusing the second husband of looting her parents' trust for his own benefit.

The trial court found the second husband had unduly influenced his wife in bad faith and had breached his fiduciary duty to her.  It ordered him to transfer title in a house to the trust, to reimburse the trust for $431,097 in unreasonable expenses, and to pay an additional $431,097 in double damages.  The second husband appealed.  Finding no error, we affirm.

## FACTS

In the 1960s, John and Evelyn Sulley bought a plot of land in Yorba Linda and built a family home (the Grandview residence).  During their marriage, they had two children: Robert Sulley and petitioner Elizabeth Sulley-Black (Beth).[1]  Robert, who passed away, is survived by his son, Anthony.

At some point in the late 1980's or early 1990's, John suffered a stroke, became severely disabled, and moved into a convalescence home.  Evelyn began a relationship with appellant Kenneth Johnson in 1994; he moved into the Grandview residence with Evelyn approximately four months later.  Kenneth never contributed to any payment for utilities, insurance, or taxes on the home.

In 1999, John (who was still alive but living in the convalescence home) and Evelyn created the Sulley Family Trust to hold and manage their property for the

---

[1]     For the sake of clarity, we refer to the parties and the other individuals involved by their first names.  We mean no disrespect.

2

benefit of Beth and their grandchildren. The trust document specified that after John and Evelyn die, the trust estate shall be distributed as follows: $10,000 outright to Kenneth, $25,000 to each of John and Evelyn's grandchildren in trust, and the remainder to Beth. It named Evelyn as trustee and Beth as successor trustee. The trust property included the Grandview residence, among other assets.

John passed away in 2002. In 2009, Evelyn caused the Grandview residence to be transferred from the Sulley Family Trust to "Evelyn M. Sulley, A Widow," evidently to facilitate a refinance loan on the property. She never transferred title back to the Sulley Family Trust.

In April 2013, after living together in the Grandview residence for nearly two decades, Evelyn and Kenneth got married in a private ceremony at the county courthouse; no friends or family were present. According to Kenneth, he did not bring any significant assets into the marriage.

Two months later, in June 2013, Evelyn executed a power of attorney appointing Kenneth as her attorney in fact for financial matters. That same day, she and Kenneth created the Johnson Family Trust, which apparently provided that the surviving trustor could use the family home as his or her primary place of residence.

Later that month, Evelyn sold the Grandview residence. The Grandview sale proceeds and other funds from the Sulley Family Trust's Citi personal wealth management account were used to purchase another house in Yorba Linda (the Calle Alcazar residence). Title was taken in the name of the Johnson Family Trust. Escrow closed on June 27, 2013.

Kenneth admitted at trial that he contributed none of his own funds to purchase the Calle Alcazar residence. He also admitted that he signed all the paperwork for the purchase of Calle Alcazar; Evelyn signed nothing. Finally, he admitted it was he, not Evelyn, who initiated the wire transfer to take funds from the Sulley Family Trust's Citi personal wealth management account for the purchase of Calle Alcazar.

3

In August 2013, just over a month after she and Kenneth purchased Calle Alcazar, Evelyn (then age 73) was diagnosed with dementia. She was soon also diagnosed with ovarian cancer. She underwent chemotherapy and was quite ill by the end of 2013. Evelyn and Kenneth's attorney and their financial advisor both then noticed she was having memory problems.

Between July 2013 and February 2016, at Kenneth's request, the Sulley Family Trust reimbursed Kenneth and Evelyn for nearly $790,000 in alleged "expenses," which included the cost of multiple RVs, multiple cars, exercise equipment, electronics, fishing equipment, over $10,000 in dental work for Kenneth, and over $110,000 in landscaping expenses, among other things. Additionally, between January 2015 and August 2017, the Sulley Family Trust wired over $1 million to Kenneth and Evelyn's joint account at US Bank.

As time passed, Kenneth and Evelyn's spending significantly increased—from about $111,000 in an 11-month period in 2013 to 2014, to about $135,000 in an 8-month period in 2014 to 2015, to about $314,000 in a 9-month period in 2016. Meanwhile, between April 2013 and September 2017, the value in the Sulley Family Trust's stock account decreased by about 50 percent from roughly $2.4 million to about $1.2 million.

Kenneth admitted at trial that he, not Evelyn, submitted the expenses to their financial planner for reimbursement from the Sulley Family Trust. He testified he believed, based on his conversations with their financial planner and estate planning attorney, that "a hundred percent of all expenses, including [his] own, could be paid by the Sulley Family Trust."

In 2016, Kenneth and Evelyn's financial planner and their estate planning attorney cautioned Kenneth that if he continued to spend money at the current rate, the Sulley Family Trust would become insolvent. They also reminded him that all expenses

4

paid by the Sulley Family Trust must be incurred for *Evelyn's* benefit. According to the attorney, Kenneth "pushed back against [their] advice."

In early 2017, the estate planning attorney contacted Beth, who lives out of state, and expressed concern that Kenneth's increased expenses could so deplete the Sulley Family Trust assets that the funds might not last long enough to care for Evelyn for the remainder of her life. By this point, Evelyn required 24-hour live-in care, which cost about $16,000 per month. Beth then visited her mother and found her condition had deteriorated; at times during their visit, Evelyn did not even know who she (Beth) was.

In April 2017, Beth filed a petition against Kenneth and Evelyn under Probate Code sections 15642 and 850, seeking to (1) remove Evelyn as trustee of the Sulley Family Trust and (2) recover the Calle Alcazar residence and all funds improperly transferred out of the Sulley Family Trust.[2] In July, Beth filed a supplement to the petition attaching a letter from Evelyn's treating physician, who reported that Evelyn had been diagnosed with dementia in 2013 and had been unable to make her own financial or medical decisions since at least 2014. The trial court granted Beth's petition for removal of trustee and appointed Beth as successor trustee of the Sulley Family Trust.

In late 2017, Evelyn moved into an assisted living facility. A few months later, Kenneth forged Beth's signature on a $20,000 check from the Sulley Family Trust (which was meant to cover Beth's legal fees) and deposited the money into his own account.

Trial on the section 850 petition went forward in March 2019. The parties stipulated to several pages worth of undisputed facts, which they included in their joint pretrial statement and which we have incorporated into our discussion above. The trial

---

[2] Section 850 permits a trustee who has a claim to real or personal property to file a petition to recover that property from a person who holds title or possession of that property. (§ 850, subd. (a)(3)(B).)

5

court also heard testimony from Beth, Kenneth, and Kenneth and Evelyn's financial planner and estate planning attorney. Evelyn did not participate in the trial; by that point in time she had developed advanced Alzheimer's.

After considering the evidence, the trial court issued an 11-page statement of decision in which it found Kenneth had breached his fiduciary duty to Evelyn, had wrongfully taken "advantage of her during a time when she was seriously ill and in the early stages of dementia," and had "wrongfully taken or disposed of property belonging to the Trust by use of undue influence and in bad faith." Accordingly, the court ordered Kenneth to reimburse the Sulley Family Trust $431,097 for unreasonable expenses under section 850, and to pay double damages and reasonable attorney fees and costs under Probate Code section 859.[3] This appeal followed.

**DISCUSSION**

Kenneth asserts (1) Beth's section 850 petition to recover the Calle Alcazar residence fails because Beth did not include Evelyn as a party and Evelyn was unrepresented at trial; (2) there is insufficient evidence Kenneth exerted undue influence over Evelyn regarding the Calle Alcazar residence; and (3) there is no evidence he improperly transferred money from the Sulley Family Trust. These arguments have no merit.

1.    *Evelyn as an Indispensable Party*

Kenneth first asserts the trial court's ruling on the Calle Alcazar residence must be overturned because Evelyn was an "indispensable party" to the petition, was unrepresented at trial, and had no guardian ad litem. These arguments fail for numerous

---

[3]    Under Probate Code section 859, "If a court finds that a person . . . has taken, concealed, or disposed of the property [belonging to an elder or a trust] by the use of undue influence in bad faith . . . , the person shall be liable for twice the value of the property recovered by an action under this part. In addition . . . the person may, in the court's discretion, be liable for reasonable attorney's fees and costs."

6

reasons: (1) Evelyn was named as a respondent in Beth's petition and was personally served with the petition; (2) to the extent Kenneth asked the trial court to appoint a guardian for Evelyn before trial, neither his request nor the court's ruling are in the record, thereby precluding meaningful appellate review of the issue; (3) Kenneth never argued at trial that Evelyn is an indispensable party or that the lack of a guardian ad litem would render the judgment invalid, and he cannot raise those issues for the first time on appeal; and (4) Kenneth cites no authority invalidating a judgment on a section 850 petition based on the trial court's failure to appoint a guardian ad litem for the trustor, and we are aware of no authority holding that a court's failure to appoint a guardian ad litem is a jurisdictional defect (see also *Medical Legal Consulting Services, Inc. v. Covarrubias* (1991) 234 Cal.App.3d 80, 87 ["the absence of an appointment of a guardian ad litem [for a minor] is not a jurisdictional defect"]).

      2.    *The Calle Alcazar Residence*

Kenneth next contends there is no evidence he exerted undue influence over Evelyn regarding the Calle Alcazar residence. We disagree.

Family Code section 721 imposes "a duty of the highest good faith and fair dealing" on spouses when they enter into property transactions with each other. (Fam. Code, § 721, subd. (b).) "'If one spouse secures an advantage from the transaction, a statutory presumption arises under section 721 that the advantaged spouse exercised undue influence and the transaction will be set aside.'" (*In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 344.) To overcome that presumption, the spouse who was advantaged must show the disadvantaged spouse's action was freely and voluntarily made with a full knowledge of all the facts and with a complete understanding of the effect of the transaction. (*Ibid.*) Whether that spouse has overcome the presumption of undue influence is a question of fact. (*Ibid.*)

Undue influence need not be established by direct evidence, as direct evidence of undue influence is "rarely obtainable"; undue influence instead "may be

7

established by circumstantial evidence." (*Lintz v. Lintz* (2014) 222 Cal.App.4th 1346, 1355.) We review the trial court's finding of undue influence for substantial evidence. (*Levin v. Winston-Levin* (2019) 39 Cal.App.5th 1025, 1042 (*Levin*).)

In this case, Kenneth secured a plain advantage from the sale of Grandview and the purchase of Calle Alcazar; Calle Alcazar was funded entirely by Evelyn and the Sulley Family Trust, with no contribution from Kenneth, yet title was taken in the name of the Johnson Family Trust. A statutory presumption of undue influence thus arose, and Kenneth bore the burden of showing Evelyn's actions were freely and voluntarily made with a full knowledge of all the facts and with a complete understanding of the effect of the transactions. The trial court evidently found Kenneth did not carry that burden, instead finding "title to Calle Alcazar was improperly transferred to the Johnson Trust as a result of undue influence."

Substantial evidence supports that factual determination. As noted above, Evelyn sold the Grandview residence (her family home which she and John had built 50 years earlier) just two months after marrying Kenneth; the funds from that sale and other Sulley Family Trust funds were used to purchase the Calle Alcazar residence; Kenneth did not contribute a single dollar of his own funds to purchase Calle Alcazar; title to Calle Alcazar was taken in the name of the Johnson Family Trust, which had been created just three weeks earlier and which afforded Kenneth the right to remain in the property if Evelyn predeceased him; Kenneth admits he signed all the paperwork for the purchase of Calle Alcazar; Evelyn signed nothing; Kenneth admits he, not Evelyn, initiated the wire transfer instructions for the purchase; and all this occurred only two months before Evelyn was formally diagnosed with dementia.

Kenneth presented no evidence at trial that Evelyn was lucid and unimpaired in June 2013 when the transactions occurred.[4] (Contrast *Levin, supra,*

_____

[4] At oral argument, Kenneth's counsel represented that Evelyn and Kenneth's attorney and their financial advisor both testified Evelyn understood the

8

39 Cal.App.5th at p. 1041 [substantial evidence supported finding of no undue influence where husband's neurologist and long-time friend reported he was "'alert and oriented'" at time of challenged transaction].)

Kenneth devotes a large portion of his briefing to a discussion of the fact that Beth has lived out of state for decades and lacks personal knowledge about her mother's wishes or Kenneth's spending. This misses the point. Taken as a whole, Kenneth's own admissions at trial and the parties' stipulated facts constitute substantial circumstantial evidence of his undue influence over Evelyn. Consequently, we affirm the trial court's judgment directing Kenneth to transfer title in the Calle Alcazar residence to the Sulley Family Trust.

3. *Reimbursements and Expenses Paid by the Sulley Family Trust*

Finally, Kenneth argues there is "no evidence" that he improperly transferred funds from the Sulley Family Trust or that the expenses in question were not used to support and benefit Evelyn. Again we disagree. Kenneth clearly caused the Sulley Family Trust to pay for expenses that were to benefit him, not Evelyn. The plainest example is Kenneth's dental work, which could not possibly have benefited Evelyn.[5] The record is replete with other examples of expenses that seemed to benefit only Kenneth, not his cancer-stricken, mentally infirm wife—e.g., RVs, cars, workout

___

significance of the transactions. The record belies that assertion. The attorney testified he noticed Evelyn's memory was impacted in late 2013 and she got worse after that; he did not specify whether he believed she was fully lucid or understood the transactions in June 2013. The financial advisor testified that during their initial meetings, Evelyn was "pretty removed from the process." She started having "trouble with recall" "about the same time that [he] became aware that she had married Ken"; Evelyn then seemed "to fade away"; eventually the relationship was "directed by Ken." Counsel was correct when he argued the advisor also testified that he asked Evelyn whether she understood his advice and she responded affirmatively. All of this testimony raised questions of fact which were clearly resolved by the trial court against Kenneth.

[5] At oral argument, Kenneth's counsel did not dispute this.

9

equipment, fishing equipment, phones, computers, and so forth. Although Kenneth testified that those purchases were to benefit Evelyn, not him, the trial court was free to reject this testimony, which it implicitly did in its ruling. We are in no position to second-guess that credibility determination.[6]

Kenneth maintains that section 850 cannot be used to challenge his lack of frugality, particularly since he was acting under a power of attorney for Evelyn. But that power of attorney was not a carte blanch to take Sulley Family Trust assets for whatever Kenneth pleased. Kenneth owed a fiduciary duty to his wife. (Fam. Code, § 721, subd. (b).) The trial court was particularly troubled, as we are, by the fact that Kenneth's excessive spending largely occurred *after* Evelyn was diagnosed with dementia; in the court's words, Evelyn "was compromised mentally . . . at a relatively young age with many potential years ahead of her requiring expensive caregiving," and Kenneth had a "duty to preserve trust assets, not squander them." To illustrate the point, the court observed that Kenneth spent over $110,000 on landscaping in 2016, when Evelyn's dementia had progressed to the point that she needed 24-hour care. We find no fault with the court's analysis.

Kenneth alternatively asserts Beth lacks standing to challenge his and Evelyn's expenditures. This argument ignores the plain language of section 850, which

---

[6] Kenneth devotes much of his briefing to rearguing the facts; this is rarely a successful appellate strategy. "We review the court's findings of fact for substantial evidence. [Citations.] Under that standard, our review begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, to support the findings below. [Citations.] In assessing whether any substantial evidence exists, we view the record in the light most favorable to respondent[], giving [her] the benefit of every reasonable inference and resolving all conflicts in [her] favor. [Citation.] '[I]t is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it.'" (*Williamson v. Brooks* (2017) 7 Cal.App.5th 1294, 1299-1300.)

creates a mechanism for a trustee or any "interested person" to recover trust property from a person who possesses that property. (§ 850, subd. (a)(3)(B); see also *Estate of Kraus* (2010) 184 Cal.App.4th 103, 113 [petitioner in section 850 petition need not prove she personally has a right to funds in question].) Indeed, the very purpose of section 850 is to prevent the looting of trusts and estates. (See *id.* at p. 111.) Beth, as successor trustee and as the residual beneficiary of the Sulley Family Trust, has standing to challenge Kenneth's use of trust funds for his own benefit. (§ 850, subd. (a)(3)(B).)

## DISPOSITION

The judgment is affirmed. Beth shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)




GOETHALS, J.

WE CONCUR:



ARONSON, ACTING P. J.



IKOLA, J.

11